Munson and others *vs.* Hungerford and others.

A stream, in which the tide does not ebb and flow, and which is not navigable
  for boats, or vessels, or rafts, and has not been declared a public highway by
  statute, is not a *navigable* stream, within the meaning of the authorities, so as
  to subject it to the use of the public, but is altogether private property.
And if a mill dam, situated upon a stream of that description, is injured by
  throwing saw-logs and spars into the stream and floating them down over the
  dam, the owner of such dam may sustain an action for his damages.
A stream, to be "navigable" so as to be considered a public highway, must fur-
  nish a common passage for the public; must be of common or public use, for
  the carriage of boats and lighters; and must be capable of bearing up and
  floating vessels for the transportation of property conducted by the agency
  of man.
A prescription presupposes a grant.   Therefore that defence is not applicable in
  a case where there can be no grantee.
The right to float logs in a stream, for two or three weeks of the year, during the
  spring freshets, in such a manner as to endanger and seriously injure the dams
  and factories and mills thereon, can not be made the subject of a dedication to
  the public; such a right not being, in any sense, *a public right*, which can, from
  the nature of the case, be enjoyed by the public at large.
*User*, alone, is not enough to establish the fact of a dedication to the public;
  except in the case of streets and public ways.

This was an action on the case, tried at the Jefferson circuit
in December, 1848, before Justice Allen, when the jury found
a verdict for the plaintiffs for $250.   The defendants having
filed a bill of exceptions, moved for a new trial.   All the facts
necessary to an understanding of the decision are stated in the
opinion of the court.

*C. P. Kirkland,* for the plaintiffs.   I. It is conceded that the
defendants, by running or floating their logs in the Black river,
caused the injury to the dam of the plaintiffs, as alledged in
their declaration.   II. The Black river not being navigable for
boats, rafts, or water craft of any kind, and not being subject to
the ebb and flow of the tide, is in no sense a highway.   (6 *Cow.*
518.   20 *John.* 90.   6 *Conn.* 543, *note.*   5 *Wend.* 423.   *Ang.*
*Wat. Courses,* 201, 2, 205, 6.   3 *Caines,* 307.   10 *John.* 236.

Munson *v.* Hungerford.

1. *McCord,* 580.   2 *Conn. Rep.* 481.   3 *N. Hamp. Rep.* 321. 3 *Greenl.* 269.   5 *Pick.* 199.   *Laws of* 1810, *p.* 106.   *Id. of* 1811, *p.* 118.   *Id. of* 1812, *p.* 588.   *Id. of* 1815, *p.* 223.   *Id. of* 1821, *p.* 97.   3 *R. S.* 262, 1*st ed. Id.* 248 *to* 280, 2*d ed.*) III. It could not be made a highway, even by legislative act, except for public purposes; and not then without providing compensation to riparian and other owners for injuries done by its being used as such highway. (5 *Wend.* 423.) IV. The occasional acts of individuals, in floating logs on the river, as stated in the bill of exceptions, created no *rights* in the defendants by usage, custom, prescription or otherwise. Such acts did not, and could not, convert this innavigable stream into a public highway, and they could not give the defendants a *right* to destroy the plaintiffs' property with impunity. (17 *Wend.* 568.) (1.) These acts were a trespass, unlawful and unauthorized. (2.) They were not acquiesced in. The right was disputed and denied. (3.) No exclusive enjoyment, that is, exclusive of the dam-owners, is pretended. (6 *East,* 208.   17 *Wend.* 568.) (4.) The right claimed is to throw in logs and let them *float at random;* not the right to navigate a stream by *water craft.* (5.) No enjoyment by the defendants, or those under whom they claim, for twenty years, is pretended. And no acts of others, whether acquiesced in or not, for that or any other length of time, could give the defendants a right. (*Jac. Law Dic. tit. Prescription.*) (6.) No right by prescription, custom, &c. can arise to use a stream for a small part of a year, or only in certain stages of the water. (7.) The very nature of the alledged use limits its enjoyment to a small number, and prevents the acquiring a right by prescription. The use alledged is the throwing in and floating of logs, and of course is confined to a few persons. (8.) On account of the great number of riparian and dam-owners, the great value of the privilege liable to injury, &c. no grant can be *presumed;* and no legislative act can be presumed, as any such act would be void: the property being private property, and its use being claimed for private, not public purposes, and compensation not being provided. (*Ang..* 76.   2 *Hill. Abr.* 178 *to* 187.   1 *Dane's Abr.* 615.   *Parker* v.

*Foote,* 19 *Wend.* 309, 319.) For these reasons the rulings and charge of the judge were right; and the motion. for a new trial should be denied.

*J. Moore, Jun.* for the defendants. I. By twenty years or a large number of years, even less than twenty years, continuous uninterrupted usage of a stream, in a particular manner conducive to the public interest and convenience, as in rafting or floating of timber or logs, the public will acquire a right to continue such use in the manner and to the extent of such continuous usage. (10 *John.* 236. 13 *Wend.* 355, 357, 368, 370. 3 *Caines,* 308, 316, 312, 319. 17 *John.* 195, 212, 198. 5 *Man. & Grang.* 613. 20 *John.* 90. 6 *East,* 208. 6 *Conn.* 538, *and note.* Ang. *Wat. Courses,* 199, 207. 5 *Pick.* 199. 21 *Id.* 344. 3 *New-Hamp. Rep.* 321. 10 *John.* 380. 3 *Durn. & East,* 159. 16 *Wend.* 531. 1 *Bos. & Pull.* 402.) II. The justice erred in overruling the defendants' offer to prove that there was an immense quantity of timber growing up the Black river on the banks thereof and lands adjacent thereto, and that the ordinary market of the same is by floating down said river by way of Dexter, and thence to Montreal and Albany; as the evidence would have shown that the public interest and convenience would be promoted by the maintenance and exercise of the right. (10 *John.* 236. 3 *Caines,* 308, 319. 17 *John.* 195.) III. The evidence given on the trial by the defendants proved the existence of the usage and right to float and run saw-logs on the Black river set up in the notice accompanying the plea, for a period and under circumstances long enough to confer that right upon the public generally. (*Same authorities as under first point.*) IV. There is no reason for a distinction between the acquisition of the right to float and run rafts and cribs of timber in an innavigable stream, by usage, and the running of saw-logs on the same stream; and no such distinction is stated or can be found in the books. (5 *Mann. & Gran.* 613. 17 *John.* 195, 198, 212.) V. There was evidence given, tending to establish the right to float and run saw-logs down the Black river, and over the plaintiffs' dam, and should have been submitted to

the jury, and would have warranted them in finding the existence of such a right. And the justice erred in declining so to submit the same, and in charging the jury that there was no evidence that the same was a public highway so as to entitle the defendants to float their logs down the same in the manner described by the witnesses.

*By the Court,* GRIDLEY, J. This case comes before the court upon exceptions taken to the ruling of the justice on the trial of the cause. The plaintiffs' claim, as stated in their declaration and proved on the trial, was founded on injuries done to their mill and factory dam, which were situated on the Black river at Brownville in the county of Jefferson. These injuries were effected by means of large quantities of saw-logs thrown into the stream between the years 1842 and 1846, to be floated down, which were driven with great violence, by the floods, and dashed against the dam, in such a manner as to displace the timbers and tear up the foundations of the structure. The defendants claimed a right to navigate the river by floating logs upon it in the manner described by the witnesses, notwithstanding the exercise of that right might involve the destruction of the property of individuals, invested in mills and factories, which depended upon dams for their supply of water. It was insisted that this right of floating logs had been acquired by long continued usage and had become a public servitude, in subordination to which the riparian owner must consent to enjoy his private right to the use of the water flowing in the stream. The bill of exceptions states that after the testimony was closed the justice, among other things, charged the jury "that there was no evidence that the river was a public highway so as to entitle the defendants to float their logs down the river, in the manner described by the witnesses, to the prejudice or damage of the plaintiffs' structure at Brownville; and if they had done so, and in so doing had injured the dam of the plaintiffs, they were liable to respond in damages for such injury; to which charge the defendants excepted.

The first question presented for our consideration is whether

the Black river, between Carthage and Brownville, a distance of about 34 miles, over which the defendants floated their logs, is a *navigable stream,* or in other words is entitled to be considered a public highway for the purpose of floating logs upon it. Streams of water have been divided into several distinct classes. 1. Arms of the sea, in which the tide ebbs and flows. These belong to the public. 2. Streams which are navigable for vessels, boats, lighters, and as it has also been held, for rafts. In these the people have the right of eminent domain for the purposes of navigation and commerce; and the riparian owner has only a qualified right to the bed of the stream, and the water which flows over it, subordinate to the superior rights of the public. To this class may, perhaps, be added such streams as have been declared by statute to be public highways. 3. Streams which are so small, shallow or rapid, as " *not to afford a passage for the king's people,*" as Lord Hale expresses it; such streams as are not navigable for boats or vessels or rafts. These are altogether private property. The Hudson river has been said to furnish an example of each of these classes of streams, in different parts of its course. That part of its course in which the tide ebbs and flows belongs exclusively to the public. Another portion is navigable for vessels and boats; and in that the riparian owner holds a qualified property subject to the public use. Another portion higher up is not navigable at all, and *that* is private property. (*See Angell on Water Courses,* 206; *Hale's Treatise " De Jure Maris,"* ch. 3; 3 *Caines' Rep.* 318; 17 *Wend.* 572; 17 *John.* 209.)

The tide does not ebb and flow in the Black river; and it has never been declared a public highway by statute. It therefore only remains to inquire whether it is *navigable,* within the meaning of the authorities, so as to subject it to the use of the public. The witness Watson, at folio 12 of the bill of exceptions, describes the only part of the river concerning which it is necessary to inquire, in the following words: " The fall from Carthage to Dexter is 400 feet. The bed of the stream is principally rock; and where I have been in sight of the river it shows rock within the distance that saw-logs and spars have

Munson *v.* Hungerford.

been run on it, that is from Carthage to Dexter. It is not navigable for floating boats or rafts, and has never been used for floating boats or rafts since my knowledge of it. The distance from Ferret's bridge, near Carthage, to Dexter, is about 30 miles, and to Brownville about 34 miles, and in that distance there is not one mile of still water except what is made by dams. I think a boat or raft would be broken to pieces on coming down the river." This is evidence furnished by the defendants themselves, and in my judgment it is conclusive upon the question, whether this is a navigable stream. A stream, to be "*navigable,*" within the authorities, (17 *John.* 209, 210, 211,) must furnish a "*common passage for the king's people,*" must be of "*common or public use for carriage of boats and lighters,*" must be capable of bearing up and floating vessels for the transportation of property, conducted by the agency of man. It is not enough that a stream is capable, (during a period in the aggregate of from two to four weeks in the year when it is swollen by the spring and autumn freshets,) of carrying down its rapid course whatever may have been thrown upon its angry waters to be borne at random over every impediment in the shape of dams or bridges which the hand of man has erected. To call such a stream navigable in any sense, it seems to us is a palpable misapplication of the term. If we are right in our conclusion upon this point, there is no error in the charge, and a new trial can not be granted on that ground. The defendants' counsel *might* have called upon the judge to express his opinion to the jury on the effect of the alleged usage to float logs in the manner complained of by the plaintiffs, admitting the Black river not to be a navigable stream; but he *did not,* and therefore that question is not raised on this bill of exceptions.

But as that question might have been raised, and as it may hereafter be raised in a future suit, we will proceed to express our opinion upon it. The defendants rely mainly on the case of *Shaw* v. *Crawford,* (10 *John.* 236.) That case was not very accurately considered, as is inferable from the remarks of Judge Spencer in the case of *The People* v. *Platt,* (17 *John.* 211,) and it was put on the ground that the stream was navigable for

rafts, and that the usage had existed for 26 years. It is now conceded by the counsel for the defendant that he cannot successfully claim the right in question by *custom* or *prescription.* The defendants have used the river for floating logs only some ten years, and of course can not prescribe for themselves; and as a prescription supposes a grant, that defence is not applicable in a case where there can be no grantee. (*See* 22 *Wend.* 440 *to* 444; 20 *Id.* 121 *to* 125; 2 *John.* 357.)

The ground, therefore, on which the defendants are compelled to rely, is that of a dedication by the riparian owners of the stream to the public, for the use and purpose of floating logs for two or three weeks of the year, during the swollen freshets, over the rapid current of the Black river, in such a manner as to endanger and seriously injure the dams of factories and mills scattered, to the number of a dozen or fifteen, all along the course of the river, from Carthage to Dexter. Upon this branch of the case two questions arise; (1.) Whether the right to float logs in the manner described can be made the subject of a dedication to the public. (2.) Whether there is sufficient evidence in the case to establish the fact of such dedication.

1. Can the right claimed by the defendants be made the subject of dedication to the public? I refer to the 6th Hill, 411, and the 22d Wendell, at page 472, to show what a public dedication is, and the legal grounds on which the principle rests. In the case of *Hunter* v. *The Trustees of Sandy Hill,* (6 *Hill,* 411,) Justice Beardsley enumerates the purposes to which lands may be dedicated; and Justice Cowen, in an elaborate opinion which he delivered in the case of *Pearsall* v. *Post,* (20 *Wend.* 115,) held that land could not, by a user of any length of time, be dedicated to the public use of landing deposits from vessels; and laid down a rule which confines such dedication to streets and highways, commons, squares, and land dedicated to charitable and religious uses. That decision was affirmed in error. And the chancellor, in delivering his opinion in favor of an affirmance of the judgment, in the court of errors, uses this language: "But a public place for landing and depositing manure, must from its very nature be confined to a very few individuals,

Munson *v.* Hungerford.

and would generally be permitted as a mere neighborhood accommodation, while the owner of the land on which it was deposited had no immediate use for the premises himself." " I think it would be most unreasonable to apply the principles of a public dedication to such a case." (22 *Id.* 434.) So it may be said that the principle claimed by the defendants must be confined to a few individuals—the owners of lands on the Black river, and the owners of some four or five saw mills at Dexter. It is in no sense a *public right* which can, from the nature of the case, be enjoyed by the public at large. Again; it can only be enjoyed for a few days in the year, and that when the river is swollen by foreign contributions to five times its usual size. It is moreover a dedication against the public interest, unless we suppose the facility of transporting logs to the saw mills at Dexter more important to the public than the mills, iron works, factories and other erections which are scattered along some thirty miles of a -river, that in water privileges has few rivals in the state. For it is a question of paramount right between the lumbermen and the dam-owners ; and a decision in favor of the former decides the question of right not only against all present owners of hydraulic works, but against all riparian owners who in the progress of time may claim to avail themselves of hitherto unappropriated water privileges. It seems to us that the argument need not be extended to show that the privilege claimed by the defendants can not well be made the subject of a public dedication.

2. We also think the evidence did not establish the existence of such a dedication. It was held by Senator Verplanck, in the 22d Wendell, 474 to 483, that *user alone* is not enough to establish the fact of a public dedication, except in the case of *streets and public ways.* I will only refer to the opinion of the distinguished senator, which is certainly an able vindication of the doctrine he attempted to establish.

In the case before the court, the number of persons who had floated logs upon the Black river during the last thirty years has been very small, and the exercise of this right has neither been uninterrupted nor acquiesced in by the owners of dams on the stream. In truth it might as well be claimed that the own-

ers of half a dozen contiguous farms, who had acquiesced in the drawing of loads over their premises for a few days in each winter, when the injury would be slight, would lose the absolute right to their lands, if they should happen to submit to such trespasses for a period of twenty years.

There was an exception to the refusal of the judge to receive evidence of the amount of timber, &c. on the bank of the Black river. It can not however be necessary to discuss this question; for if we are right in the conclusions to which we have come on the other branches of the case, this evidence can not amount to a defence.

New trial denied.

