Peck, J.
This ease was disposed of in the court below, (2 Hand. S. C. Rep. 176,) on the ground that there had been no such dedication of Market street above the Columbia road, as would authorize the corporate authorities of Eulton to maintain ejectment against one claiming title, and withholding the possession from the uses to which it was supposed to have been dedicated. And it has been mainly argued before us upon the same ground.
Now, what are the facts disclosed by the record bearing upon this dedication ?
The premises in controversy are a strip of land lying on the west or upper side of Columbia road, in Eulton township, some thirty feet front, and extending hack from said road and up the hill on the southwest part of a ten acre tract of land formerly owned by Samuel W. Davies, and extending from the river up to and upon the hill, claimed by the plaintiff as having been dedicated by said Davies as early as 1830, as part of Market street, extending from the river the entire length of the south line of said ten acre tract.
In 1830 Davies, being in possession and owner in fee of said tract, subject to a mortgage before that time given by him to the Bank of the United States, caused about seven acres on the east end of the tract to be subdivided into lots, with streets and alleys, extending from the river westwardly, so as to include one range of lots on the hill *442 west of Columbia road, in which plat, among other things, he appropriated forty feet on the south line, to be added to Market street, extending from the river to that portion of the ten acres which was not thus subdivided, and terminating in the unplatted part.
This plat, though signed and recorded, was never acknowledged, as the law then in force required;. and in A. D. 1834, Davies, in consideration of the deposit of collateral securities with the bank, as further guarantee of their mortgage lien, procured from said bank a confirmation of said subdivision, a release from the operation of the mortgage of certain lots before that time sold by said Davies, and an agreement to release other portions, from time to time, if sold by said Davies at prices satisfactory to them, and the proceeds of the sales delivered to them as further collateral security for the mortgage debts. Subsequently the bank instituted proceedings for the foreclosure and sale of that portion of said mortgaged premises which had not been released, in the superior court of Cincinnati, in which the residue of the property by the order of said court was sold by the sheriff to one Timothy Kirby as purchaser. The lots were sold as lots under the plat, and the portion unplatted, as three acres lying west of the part so laid out. No part of the lots on the west side of Columbia road had been sold or released prior to the sale to Kirby, but were all then sold and conveyed to him.
Kirby subsequently conveyed all the premises thus purchased, by the same description, to Joseph Cowperthwaite and others, of Philadelphia, who, by sundry conveyances, granted all the lots on the east side of Columbia road to various persons, and on the 12th day of September, 1841, conveyed all the tract on the west side of said road, including the tier of lots and the three acres in the rear, to Dundas and others, describing it as five acres of land on the west end of the tract.
On May 15,1844, Timothy Kirby, as agent and attorney *443 for Dundas and others, executed and acknowledged a plat of subdivision of said five acres, dividing the land into sixteen lots, numbered one to sixteen, inclusive; all which lots front on said road and extend back and up the hill to the rear line of the tract, varying from thirty to thirty-three' feet front, and about five hundred and fifty feet rear.
March 27, 1845, Dundas and others, by deed conveyed lot No. 1 in said last plat to N. Graves, under whom defendant claims title. This lot lies within the limits of said Market street, if extended on the west side of the Columbia road. It was also admitted that that portion of Market street which lies east of said road, had been accepted and worked by the corporate authorities of Bulton; but that that portion which lies west had never been worked or openly accepted by them; that it had not been used by any one — a mere “ cul de sac,” running up the hillside, and terminating in the private property of the person platting the ground — and not used or required by any one, until long after the laying out of the ground by Dundas and others.
Since then, the steep and almost inaccessible hillside has been laid off into small lots by Dundas and his assignees, and two streets parallel with said road have been established.
The forty feet appropriated by the Davies plat is therein stated as to be added to the twenty feet laid off by Carr and others, so as to make it a street sixty feet wide, but there is no evidence that the Carr contribution was extended beyond Columbia road.
The first question that arises upon these facts is, was the act of Davies in recording the plat of 1830, such a dedication of Market street west of Columbia road, taken in connection with the subsequent events, as conferred upon the plaintiff the right to maintain this action ? It is not enough that some person or persons, other than the plaintiff, have a right to object to the closing up and alienation of *444 that portion of the street; but has the plaintiff any such right ?
In this action, the plaintiff must recover by the strength of his own right, and not by reason of the weakness of that of his adversary.
Land maybe dedicated to public uses for roads or streets, by conforming to the statutory requirements, or in accordance with the rules of the common law. Either mode is equally efficacious.
The statutory mode in force at'the time, is pointed out in 22 O. L. 301.
The first section requires an accurate map or plat to be made out and recorded before any lots therein are offered for sale, and subjects the proprietor to a forfeiture of ten dollars for every lot sold before such record.
The second section provides that the plat shall particularly describe all the public ground within the town, by its boundaries, courses and extent; and whether it be intended for streets, alleys, commons or other public uses, and all the lots intended for sale, by progressive numbers and their precise length and width; and then provides that the map so made, and acknowledged before certain officers, and recorded, shall be deemed a sufficient conveyance, to vest the fee in the county in which such town lies, in trust, etc.
The statute, as will be perceived, does not require any assent on the part of the jmblic to such dedication, before the estate vests in the public, and, in that respect, differs essentially from a common law dedication. Where there is no express grant to a grantee upon consideration, a dedication of ground to public uses at common law operates by way of an estoppel in pais of the owner, rather than as a grant or the transfer of an interest in the land. City of Cincinnati v. White, 6 Pet. S. C. Rep. 582; Town of Paulet v. Clark, 9 Cranch 202; Hunter v. Trustees of Sandy Hill, 6 Hill 407; Curtis v. Keesler, 14 Barb. 521.
*445 In the case last cited from 6 Hill, it is said to be the creation of an anomalous interest, no grantee in esse being necessary, under which rights are parted with and acquired in modes and by means that are peculiar, and on page 411, is defined to be “the act of devoting or giving property to some proper object, and in such a manner as to conclude the owner.”
Such being the office and effect of a dedication at common law, it is apparent that there is no conflict between it and a statutory dedication. The latter is intended to operate by way of grant, not estoppel. The solemnities of a grant are required to its creation. It is to be acknowledged and recorded as a grant. And then the statute declares its effect as a grant by the words, “ when so made and recorded, it shall be a sufficient conveyance, vesting the fee in,” etc.
Such being the object and effect of the statute, it is obvious that in order to create a statutory dedication, the provisions of the statute, in reference to an acknowledgment, must be complied with, and that without such acknowledgment, it is no more effective to pass the estate or interest specified, than an unacknowledged deed. We have been referred to the case of Morris v. Bowers, decided in 1834, by the supreme court on the circuit, Wright’s Rep. 750, which is supposed to be decisive of the case at bar, and in which Collet, C. J., says : “ That though the acknowledgment is necessary to pass the fee, the plat, without such acknowledgment, if recorded, would vest the use of the streets-in the public.” That case may have been rightly decided, but the ground assumed by the learned judge is based, we conceive, upon a misapprehension of the objects and.purposes of the statute. A defective plat may be a sufficient devotion of the ground to public uses on the part of the owner; and its acceptance by the public would constitute a common law dedication, though, for manifest reasons, it is not a statutory dedication..
So, too, the reference to the map or plat, found in the *446 subsequent deeds, through which the defendant traces his title, will not supply the want of such acknowledgment, so as to render it a statutory dedication on the part of Davies, and vest the fee or the use, by force of the statute, in the public.
The importance of the distinction between dedications under the statute and at common law is obvious. Under the law then in force, upon the acknowledgment and record of the plat, the fee of the streets and public grounds therein specified, eo instanti, became and was vested in the public for the uses declared, without any act indicating an acceptance on the part of the public; while a dedication at common law only becomes operative upon its acceptance by the public.
Assuming, then, that there was no statutory dedication, was there such a dedication at common law as conferred upon the plaintiff, at the time of suit brought, the right to that portion of Market street delineated upon the plat as west of the road ?
This is not a claim preferred by any of the lot holders to the use of that part of the street, 'by reason of an estoppel in their favor, as purchasers of lots on the plat delineating the street; but is preferred by the public, whose claim, if they have any, depends upon the question of a dedication by the owner, and not of an express grant to them or the public.
To constitute a binding dedication of ground to public uses at common law, there must have been an intention to dedicate, and an actual dedication, on the part of the owner, and an acceptance on the part of the public, which may be proved by the circumstances of the case.
As to that part of Market street which lies below the road, and the other streets and alleys delineated on the plat, such intention to dedicate on the part of Davies, may be fairly inferred from the plat itself, and the language he employs. These streets and alleys were all necessary to the full and beneficial use of the lots prepared for sale, *447 in giving access to, and egress from, them; and the presence or absence of which would enhance or diminish their value. But this is by no means so apparent, in regard to the short strip of Market street west of the road. There was only one range of lots laid off west of the road, all of which fronted upon the road; and there was no alley in the rear by which access to their lots could be obtained from Market street. Only one lot that adjoined Market street, could by possibility have been benefited by its use.
Davies still retained the three acres on the hill in the rear of that range of lots, the access to which he had cut off, except by means of this space, and a corresponding space on the north side.
The more sensible and practical inference from these facts, and the plat itself, passing the range of lots indefinitely, and terminating upon his reserved property, would seem to be, that he thereby intended to reserve it as a means of access to the three acres reserved, and which would otherwise be inaccessible from the road.
If there had been an intention on the part of Davies to dedicate the upper part of Market street, still, upon a careful consideration of the evidence, we do not find that the corporate authorities of Eulton ever in fact accepted of such dedication.
There is no evidence of any user of that part of Market street by any one. Indeed no part of the premises west of the road had been sold to third persons, or was occupied in any way, until some time after the Dundas plat of 1845 — the premises in the rear, in which the street apparently terminated, belonged exclusively to Dundas and his co-grantees, and was then in a wild and uncultivated condition — the hillside steep and precipitous, and it is difficult to see how the street could have been used, or that any one, besides the owners of the ground in the rear, could ever have desired to use it. There certainly is no evidence that the corporate authorities of Eulton ever accepted the dedication of that part of Market street, or assumed any *448 control or direction over it, prior to the bringing of this action. Some affirmative act on their part was necessary to indicate their acceptance. No such act is discovered in this case. On the contrary, nearly twenty-three years from the record of the plat, eight years from the making of the Dundas plat, and seven years from the grant to Cole of the land, are suffered to elapse before they claim the land.
Hut it is said that inasmuch as the corporate authorities of Fulton did accept that part of the street which lies below the Columbia road, it of necessity amounted to an acceptance of the whole, as the road is to be regarded as a unit.
This does not, in our judgment, necessarily follow. The question of acceptance or not, in all cases, is a question of fact, to be gathered from the circumstances. There was no settlement, no parallel road further up the hill with which the street west of the road communicated. The road was the main and perhaps the only thoroughfare from that quarter to the city. The portion below the road to the river had been laid out into lots, streets, commons and market places; many of the lots sold and improved, and the street leading from the river front and passing the mouth of Fulton street to that thoroughfare, had been graded and paved for several years. It would seem to be clear, from these circumstances, that in the absence of any affirmative act of acceptance, those authorities never accepted that strip of road on the west side leading to no other road, settlement or house, and terminating in a three acre lot belonging to the grantees of Davies.
It is claimed that Kirby, in making and acknowledging the plat of 1844, subdividing the lands west of the Columbia road for Dundas and others, acted without authority. If this were so, the subsequent recognition of Dundas and his co-tenants of the plat, in their deeds to N. Graves and others, is ample ratification of the plat.
In short, upon a careful review of all the evidence, we are satisfied that there was no such dedication by Davies, *449 and acceptance on the part of the public authorities of Eulton, of the premises in controversy as entitles the plaintiff to maintain this action, whatever may be the rights of persons who may have purchased lots specified upon the plat, to the use of such street. Even if they may object to an appropriation of the ground to private uses, the public, who have never acted for so long a period, and have permitted alienations to be made and moneys to be expended in costly improvements thereon, have certainly no right now to complain.
The judgments of the superior court are therefore affirmed.
Swan, C. J., and Brinkerhoee, Scott and Sutliee, JJ., concurred.