Peelle, Ch. J.,
delivered the opinion of the court:
This is one of the several cases submitted for the taking of private property for public use growing out of the construction by the Government, under the act of June 3, 1896 (29 Stat. L., 202, 219), of certain dams or locks in the Monongahela Liver, West Virginia, whereby the water in the river has been raised and backed up and overflows upon and over certain lands of the claimant, permanently submerging 2X% acres of the 5-acre tract of bottom land referred to in the findings.
*485 The claimant’s residence and stable are located on the highest portion of said 5-acre tract farthest away from the land so permanently submerged.
Prior to the construction of said lock the river had overflowed all of said bottom land on two or three occasions, and had entered the claimant’s dwelling and stable, thereby compelling him to abandon his dwelling for a few days until the water had receded.
Since the construction of said lock the overflows have been more frequent, especially in the winter and spring; and while less than half of said bottom land has been permanently submerged, and the claimant thereby deprived of the use and enjoyment thereof, the residue of said bottom land is damaged and the claimant’s dwelling situate thereon rendered more undesirable and unhealthy as a place of residence.
In the case of Scranton v. Wheeler (179 U. S., 141, 153), where the Government had constructed, by authority of an act of Congress, a pier resting on the submerged lands away from but in front of the owner’s upland, the court said:
“ Undoubtedly compensation must be made or secured to the owner when that which is done is to be regarded as a taking of private property for public use within the meaning of the fifth amendment of the Constitution; and of course, in its exercise of power to regulate commerce, Congress may not override the provision that just compensation must be made when private property is taken for public use.”
And further, quoting from the case of Pumpelly v. Green Bay Company (13 Wall., 166,181), it was said:
“ Where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and this proposition is not in conflict with the weight of judicial authority in this coimtry, and certainly not with sound principle.”
The court, after reviewing other authorities on the subject, concludes:
“ We are of opinion that the court below correctly held that the plaintiff had no such right of property in the submerged lands on which the- pier in question rests as entitles him, under the Constitution, to be compensated for any loss of access from his upland to navigability resulting from the *486 erection and maintenance of such pier by the United States in order to improve, and which manifestly did improve, the navigation of a public navigable water.”
In the case of Gibson v. United States (166 U. S., 269, 271), where the claimant’s landing on the Ohio Elver had been destroyed by reason of the construction of a dike by authority of an act of Congress, thereby reducing the value of his land from $600 to $200 per acre, the court said:
“All navigable waters are under the control of the United States for the purpose of regulating and improving navigation, and although the title to the shore and submerged soil is in the various States and individual owners under them, it is always subject to the servitude in respect of navigation created in favor of the Federal Government by the Constitution.” (South Carolina v. Georgia, 93 U. S., 4; Shively v. Bowlby, 152 U. S., 1; Eldridge v. Trezevant, 160 U. S., 452.)
In the case of United States v. Lynch (188 U. S., 445, 470, 472), where the improvement of the Savannah Biver, by authority of an act of Congress, was in such manner as to hinder-the natural flow and to raise the water so as to overflow the lands of the claimant, thereb}1, causing the total destruction of the value of said lands, the court, after reviewing the various authorities on the subject, said:
“ It is clear from these authorities that where the Government by the construction of a dam or other public works so flood lands belonging to an individual as to substantially destroy their value, there is a taking within the scope of the fifth amendment. While the Government does not directly proceed to appropriate the title, yet it takes away the use and value; when that is done it is of little consequence in whom the fee may be vested. Of course, it results from this that the proceeding must be regarded as an actual appropriation of the land, including the possession, the right of possession, and the fee; and when the amount awarded as compensation is paid, the title, the fee, with whatever rights may attach thereto — in this case those at least which belong to a riparian proprietor — pass to the Government and it becomes henceforth the full owner. * * *
“ There have been many cases in which a distinction has been drawn between the taking of property for public uses and a consequential injury to such property by reason of some public work. In the one class the law implies a contract, a promise to pay for the property taken, which, if the *487 taking was by tbe General Government, will uphold an action in the Court of Claims; while in the other class there is simply a tortious act doing injury, over which the Court of Claims has no jurisdiction.”
In the case of Bedford v. United States (192 U. S., 217, 225), where lands were flooded by reason of the construction by the Government of a revetment in the Mississippi River to prevent erosion, the court said:
“ In the case at bar the damage was strictly consequential. It was the result of the action of the river through a course of years. The case at bar, therefore, is distinguishable from the Lynah case in the cause and manner of the injury. In the Lynah case the works were constructed in the bed of the river, obstructed the natural flow of its water, and were held, to have caused, as a direct consequence, the overflow of Lynah’s plantation. Jn the case at bar the works were constructed along the banks of the river and their effect was to resist erosion of the banks by the waters of the river. There was no other interference with natural conditions. Therefore the damage to appellant’s land, if it can be assigned to the works at all, was but an incidental consequence of them.”
To the same effect is the case of Manigault v. Springs (199 U. S., 473, 484), though in that case, after reviewing various authorities on the subject of what constitutes a taking as contradistinguished from- consequential injury, the court said:
“ We think the rule to be gathered from these cases is that where there is a practical destruction or material impairment of the value of plaintiff’s lands there is a taking, which demands compensation, but otherwise where, as in this case, plaintiff is merely put to some extra expense in warding off the consequences of the overflow.
“ The damage claimed by the plaintiff in the interruption of access to his lands and the impairment of his right to navigate the creek does not demand separate consideration. We have repeatedly held that where the Government of the United States has, for the purposes of improving the navigation of a river, erected piers or other structures by which access to plaintiff’s land is rendered more difficult there is no claim for compensation.”
From the foregoing and other authorities to the same effect which might be cited it is clear that a distinction must be made between property actually taken and appropriated *488 by the Government and. damages to property in the construction of public works, particularly in the- improvement of rivers which afford a channel for useful commerce (The Montello, 20 Wall., 430) and of which riparian proprietors are bound to take notice. That is to say, while the owners of land adjacent to such waters are entitled to profit by their advantage and to improve their property in connection therewith, their rights are nevertheless subject to such rules for the public good as the legislature may prescribe.
The whole case is this: Before the construction of the lock all of the claimant’s land had on two or three occasions been overflowed and he was compelled to abandon his residence until the water receded. Since the construction of the lock and as the direct result thereof acres of the land have become permanently submerged, while the residue of the 5-acre tract is more liable to overflow in times of freshets; but such overflows so caused by freshets are not of such frequency as to amount to a taking of said land, even if the United States were liable therefor; nor is access thereto cut off by reason of the submerged land; hence it can not be held that such occasional overflows are the direct result of the construction of the lock, as the raising of the level of the water by said construction was in submerging the 2^ acres.
Judgment is ordered to be entered in favor of the claimant for $230.
Howey, J., was not present when this case was heard and took no part in its decision.