Howry, J.,
delivered the opinion of the court:
This case is one of a class originally referred to this court to find the facts and make report thereof to Congress under the provisions of the act of March 3, 1883, commonly known ■ as the Bowman Act, 22 Stat., 485. The jurisdiction of the court is invoked for judgment to be entered against the Government (for the sum of $15,000 in this particular case) under and by virtue of an amendment to the Bowman Act providing for judgment in certain cases, which amendment is set forth in the act of March 3, 1887, commonly known as the Tucker Act, 24 Stat., 505. Section 13 of the Tucker Act provides:
“ In every case which shall come before the Court of Claims, or is now pending therein, under the provisions of an act entitled ‘An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government,’ approved March third, eighteen hundred and eighty-three, if it shall appear to the satisfaction of the court, upon the facts established, that it has jurisdiction to render judgment or decree thereon under existing laws or under the provisions of this act, it shall proceed to do so, giving to either party such further opportunity for hearing as, in its judgment, justice shall require, and report its proceedings therein to either House of Congress or to the department by which the same was referred to said court.”
*24 Plaintiff, as the owner of a parcel of land on the Monongahela River in West Virginia, on which he has a water mill connected with a dam extending across the river and located upon the land where his mill is situated, alleges that this dam was constructed many years prior to 1903 and maintained under authority of the State of Virginia prior to 1863, and permitted to be maintained subsequent to that period by West Virginia, to the time of the completion of a lock and dam constructed by the United States about 2 miles below the mill. Plaintiff further alleges that the lock and dam constructed and completed by the authority of Congress 2 miles below his mill was for the purpose of improving the navigation of the Monongahela River; and that the construction and completion of the said lock and dam caused the accumulation and backing up of the water of the river to such an extent as to destroy the water power of his mill, and that said accumulation and backing up of the water in the river is permanent, with the result that the dam and mill owned by him are useless and of no service since the completion of the lock and dam erected by authority of the United States. He alleges that he is not now able to make any use of his flour and grist mill for grinding grains, but that he has been obliged to abandon the use of the mill, and that the dam across the river and extending to his mill property has been made useless and of no service to him.
The issues between the parties relate to the ownership of the property described in the petition and its taking within the meaning of the fifth amendment to the Constitution. The property stated by plaintiff to have been taken is alleged to have been and yet is a private right of property for which compensation can and should be awarded. Plaintiff’s contention is, citing Morris v. United States, 174 U. S., 196, that the royal charters granted by the English Crown to the founders of the Atlantic colonies conveyed to the grantees both the territories described and the powers of government, and that under such charters the dominion or proprietary right in the navigable waters and in the soil under them passed as part of the prerogative rights annexed to the political powers conferred on the patentees, and that *25 such rights became vested in the several States for like purposes where such were not surrendered by the Constitution to the Federal Government. That the Virginia statute of 1776, citing Scott v. Lunt, 7 Pet., 596, adopted the common law of England, and that the only waters recognized in England as navigable were the tide waters. That acts of Congress admitting the various States to the Union provide that tlie navigable waters should be common highways and forever free, although establishing jurisdiction and control over navigable waters. But it is further alleged that the United States did not acquire or assume jurisdiction of the navigable waters of the 18 original States until February 26, 1845. 5 Stats., 726. That prior to said act the Supreme Court had held the jurisdiction of courts of admiralty to be limited to the ebb and flow of the tide, citing Jefferson, 10 Wheat., 428; Steamboat Orleans v. Phoebus, 11 Pet., 175. Plaintiff further alleges that those rivers only are regarded as public navigable rivers in law which are navigable in fact, and that they are navigable in fact only when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce over which trade and travel are or may be conducted in the customary modes of trade and travel on water. The final contention on this part of the case is that where a stream is made navigable (by artificial means only), the public have no right of navigation thereon, citing United States v.Rio Grande Irrigation Co., 174 U. S., 707; Wadsworth v. Smith, 26 Am. Des., 525; Miller v. New York, 109 U. S., 385; Leavy v. United States, 177 ib., 621; Cardwell v. American Bridge Co., 113 ib., 205; Packer v. Bird, 137 ib., 661; Rhea v. Newport Co., 50 Fed. Pep., 16; Munson v. Hungerford, 6 Barb., 265; Curtis v. Keeler, 14 ib., 511; Moor v. Sanborne, 2 Gibbs, 519; American River Co. v. Amsden, 6 Cal., 443.
Defendants concede that plaintiff owned the privilege of operating his mill with water power created by the ancient milldam extending across the river by virtue of the permission granted by certain acts of the Virginia Assembly to build and maintain such dam in the bed of the river and the *26 mill building over and above the stream. But they contend that in granting permits (to the original grantees under whom plaintiff took possession) for maintaining milldams and operating gristmills along the Monongahela the navigation was not to be interfered with. With this contention there are exhibited certain acts of the Virginia Assembly extending as far back as 1792, and it is contended that the numerous authorities cited by claimant to sustain the claim that the Monongahela was never known as a navigable stream is not borne out by the legislation in Virginia. Defendants cite authorities in support of the proposition that, whatever construction the court may put upon the legislative acts mentioned, the authority granted by the State was but a license revocable by the General Government in the exercise of the right of eminent domain, for which compensation can not be made. In this connection we are referred to the recent case in this court of Walls v. United States, 44 C. Cls. R., 482, where the court declared the Monongahela to be navigable. Another case in this court, referred to by counsel for the Government, is the case of Overton v. United States, 45 C. Cls. R., where the question, was presented of the rights of Louisiana to lands within that State bordering on the Mississippi River; and yet another case, that of Tompkins v. United States, 45 Ibid., where the question was presented whether the overflow of certain lands during stages of high water caused by the waves and currents resulting from the construction of a Government dam across the Kanawha River was a taking within the meaning of the fifth amendment of the Constitution. These last cases are valuable not only for what they decide but for the extensive review of the authorities on the general propositions there decided, and especially in the matter of what constitutes a taking. And, again, defendants have elaborated their contentions by decisions which show that any stream is navigable which can by improvement be made suitable for navigation, and on this proposition and the matter of license or ownership and riparian rights generally and what constitutes a taking defendants cite the following authorities: Genesee Chief, 12 How., 443; United States v. Union Bridge Co., 148 Fed. Rep., 377; 204 U. S., 364; Gill- *27 man v. Philadelphia, 3 Wall., 713, and cases there cited; The Daniel Ball, 10 Wall., 557; Bridge Co. v. United States, 105 U. S., 475; Willamette Iron Co. v. ’Hatch, 125 U. S., 1; Monongahela Navigation Co. v. United States, 148 U. S., 312; United States v. Grande Irrigation Co., 174 U. S., 707; Leovy v. United States, 177 U. S., 621; Scranton v. Wheeler, 179 U. S., 141; Shively v. Bowlby, 152 U. S., 1; Richardson v. United States, 100 Fed. Rep., 114; Montello, 20 Wall., 430; State of Pennsylvania v. Wheeling Bridge Co., 19 U. S., 621; United States v. City of Moline., 82 Fed. Rep., 592; Gibson v. United States, 29 C. Cls. R., 18; Rundell v. Delaware and Raritan Canal Co., 14 How., 79; Monongahela Navigation Co. v. Combs, 6 Wats. & S. Pa., 101; Susquehanna Coal Co. v. Wright, 9 Ibid., 9; Union Bridge Co. v. United States, 204 U. S., 364.
No useful purpose will be subserved by reviewing the authorities cited by the respective counsel or by attempting to reconcile the conflicting decisions which seem to exist on some of the questions presented by the various cases. That confusion created by the decisions relating to riparian ownership on navigable waters and to acts involving the improvement and taking of property in the exercise of the dominant right of the Government exists can be verified by a comparison of that line of decisions of which Gibson v. United States, 166 U. S., 269, and certain State cases, on the one hand, and the very recent case of United States v. Welch, 217 U. S., 333, on the other hand, are examples. We prefer to go to what we think are the controlling questions presented by the case we are now deciding.
The jurisdiction of 'the court and the authority to enter judgment for plaintiff for anything under the thirteenth section of the act of March 3, 1887, supra, can be maintained if plaintiff’s right to the use of the ancient dam in the bed of the river be such a private right as to constitute an easement. It all depends on the nature of the franchise claimed to have been exercised in such cases and whether with respect to the grant and the authority exercised under the terms of such grant, if grant there be, the private right claimed is of that character which does not yield to the superior servitude claimed by the United States.
*28 There is no evidence before the court that the river was a navigable stream at the time plaintiff’s dam was authorized to be placed in the bed of the river. But the court has incorporated into the findings the various acts of the Virginia Assembly pertaining to the subject, inasmuch as these acts are not objected to and can not be, and must be taken as evidence and therefore proper to be treated as facts for whatever they establish.
Looking to these acts we find it established as facts necessary to be considered that the Monongahela Liver from 1800 was considered by the proper legislative authority a stream subject to navigation. It would seem, then, that inasmuch-as the provisions of the Constitution for the regulation of commerce between the States had attached, any improvements authorized by the Virginia Assembly were done subject to the provisions of the Federal Constitution.
We have also found in a case heretofore and but recently tried in this court that the Monongahela Liver was declared to be a navigable water. The finding appears to have been made as the result of more direct proof than that before the court in the present case.
In United States v. Union Bridge Co., 143 Fed. Rep., 377, it was held that the Allegheny Liver is a navigable waterway because declared to be such by the legislatures of Pennsylvania and New York in 1798 and 1807, respectively. That case was affirmed by the Supreme Court. 204 U. S., 364.
In the case of the Genesee Chief, 12 How., 443, it was held that the admiralty and marine jurisdiction granted to the General Government by the Constitution is not limited to tidewaters, but extends to all public navigable lakes and rivers where commerce is carried on between different States or with foreign nations.
The authorities further hold that any stream which can be made suitable for navigation by improvement for the carrying of commerce is a navigable water, and that the true test of navigability is the capability of a stream to be used by the public for purposes of transportation and commerce. In a case of long standing it was held that the Fox Liver, in Wisconsin, was navigable notwithstanding the fact that the *29 river in its natural state had never been a channel for useful commerce because of rocks and rapids in the river, and which afterwards, by canals, locks, and other artificial means, was improved to such an extent that steamers could make free use of the channel. Montello, 20 Wall., 480.
Plaintiff’s right to the use of the water in the bed of the Monongahela River and his interest in the dam for whatever benefits the use thereof gave to him in the operation of his mill was not such a property right as entitled him to compensation. The' lock and dam constructed 2 miles below the ancient dam by the mill was completed under authority of Congress, and the power of the Government in respect to legislation for the preservation of interstate commerce was free from State interference.
It is true in Monongahela Navigation Co. v. United States, 148 U. S., 312, the Supreme Court said that a franchise to charge toll or lock fees on commerce going through the locks was a property right. And the Supreme Court has also declared in the recent case of United States v. Welch, sufra, that a private right of way is an easement and is land; and that the destruction of such a private right for public purposes is a taking entitling the owner of the dominant estate to which the right of way is attached to compensation. But the case at bar is unlike that of a franchise or of a private right .of way. Thus, a bridge across a navigable river of the United States is the subject of legislation by Congress. Such a bridge may be declared to be an unlawful structure by Federal authority which the legislation of a State may not impair. So, when a river is capable of navigation and affords a channel for interstate commerce it is open to the public and may be improved according to the directions of Congress. Again, oyster beds destroyed from the lawful action of the United States in dredging the channel of a river is not a taking of private property for public use. While the State may grant the use of river beds to private citizens, such grants are subject to the obligation to suffer the consequences incident to the improvement of the navigation of the river under an act of Congress. Richardson v. United States, 100 Fed. Rep., 114.
*30 Plaintiff’s right as a riparian owner to the use of the stream on which his mill was located because of the ancient dam must be treated as a license. For these reasons plaintiff is not entitled to a judgment against the United States under the thirteenth section of the act of March 3, 1877. 24 Stat., 505.
But under the provisions of the Bowman Act the court’s findings must be reported to Congress. Accordingly, the findings in this behalf will be transmitted to those bodies, together with a copy of this opinion.