**SINCLAIR PIPE LINE COMPANY**

v.

**UNITED STATES.**

**No. 537–59.**

United States Court of Claims.

March 1, 1961.

Harold Medill, Independence, Kan., for plaintiff.

Howard O. Sigmond, with whom was Perry W. Morton, Asst. Atty. Gen., Washington, D. C., for defendant.

WHITAKER, Judge.

Plaintiff sues to recover just compensation for the alleged taking of its right to maintain and operate a section of pipeline across land acquired by defendant through condemnation proceedings. Plaintiff had acquired from the former owner permission to maintain its pipeline on the land condemned by defendant, but, upon acquisition of the property by defendant, it was required to remove its pipeline from the property.

A section of plaintiff's pipeline system had been maintained and operated on land owned by the Pennsylvania Railroad Company in Dauphin County, Pennsylvania, under a written agreement dated November 1, 1942, with the railroad, under which it extended to plaintiff "permission and privilege as a mere license, revocable and terminable upon notice as hereinafter provided * * *" to construct and maintain its pipeline across the land in question. Paragraph 5 of the agreement provided in part:

"[I]n the event of the lease, sale or disposal of the premises or any part thereof encumbered by this license, then the Refining Company shall, at its sole cost and expense, make such adjustments of, relocation in or removal of its facilities as may be requested by the Railroad Company, or its grantees * * *."

In 1956 defendant, in order to construct the Olmsted Air Force Base, instituted condemnation proceedings in the United States District Court, Middle District of Pennsylvania, to acquire the land on which plaintiff had installed its pipeline. A declaration of taking was filed whereby defendant acquired from the railroad the fee simple title to the land, subject only to existing easements for public roads and highways, public utilities, railroads and pipelines. Following the acquisition of title, defendant took possession of the land.

Thereafter, on November 26, 1958, plaintiff and defendant entered into a written contract whereby plaintiff agreed to relocate its pipeline to allow for the development of the Air Force Base, and it did relocate it. Defendant paid plaintiff for the cost of relocating that portion of its pipeline which was located on land in which plaintiff had an easement, but it refused to pay for the cost of relocating that portion located on land in which the Government thought plaintiff did not have an easement, which is the portion with which we are concerned. Plaintiff, however, reserved "the right at its election to claim compensation from the Government for the cost of relocating its existing facilities between points 'A' and 'B', Exhibit 'B'," the portion with which we are concerned. Plaintiff now claims its cost of relocation of these facilities, as compensation for the taking of what it calls a "terminable easement" in the lands.

Defendant says that plaintiff had no compensable interest in the land, but a mere license to maintain the pipeline across the railroad's land, subject to the railroad's right, under paragraph 5 of its agreement with plaintiff, supra, to re-quire plaintiff to relocate it at its own expense, in case of sale or lease, and it asserts that it acquired this right when it acquired the fee.

In its declaration of taking, defendant set out what it wanted and what it intended to take. The stipulation of facts shows that the declaration of taking recited that the United States was taking "the fee simple title to said land * * *, subject only to existing easements for public roads and highways, public utilities, railroads, and pipe lines." Hence, the defendant did not take any easement in the property owned by a pipeline company, among other easements, and, so, if plaintiff had an easement in the property, it was not taken.

■ It seems plain that plaintiff did not have an easement. The railroad took pains not to grant an easement. The contract between it and the pipeline company recited that the railroad company "extends to the said Refining Company permission and privilege, as a mere license, revocable and terminable upon notice as hereinafter provided, to construct * * *." This was not the grant of an easement in the property. The railroad parted with no part of its title. Notwithstanding the license, it continued to own the property in fee simple; its title was unencumbered, and could be transferred free of any claim to an interest in the property by the pipeline company.

Had it intended to convey an interest in the land, which could be asserted against a subsequent owner, the contract would have used words of conveyance, such as "grant" and "convey"; instead, it recited that the railroad company extended "permission and privilege, as a mere license." Had there been an intention to convey an interest, the contract would have been acknowledged and recorded, so that subsequent owners of the property would be bound by the terms of the contract. Neither was done.

All the authorities recognize a distinction between an easement and a license, and the difference in the rights of the holder of one as against the other.

Thomson, Real Property, Vol. I, § 318 (1939 ed.) distinguishes an easement from a license as follows:

"An easement should be carefully distinguished from a license given to one person to do something on the land of another. A license is a mere permission or personal and revocable privilege without the licensee possessing any estate in the land. A license passes no property in land and no interest in it. It confers a right, for instance, to go upon one's land when it would be unlawful to do so without a license."

Restatement, Property, § 514, makes the following distinction between an easement and a license:

"§ 514. *Licenses Analogous, As To Use, To Easements.*

"A privilege to use land in the possession of another is a license if, though the use privileged is of such a character that the privilege to make it could be created as an easement.

"(a) its creation lacks a formal requirement necessary to the creation of an easement,

or

"(b) it is created to endure at the will of the possessor of the land subject to the privilege."

The comment to clause (b) states as follows:

"*Created to endure at will of possessor.* An easement cannot be an interest subject to the will of the possessor of the servient tenement. * * * If a privilege to use land in the possession of another is subject to the will of the possessor of the land with respect to which it exists, it must be a license rather than an easement."

See also the comment to clause (c), § 450 of the Restatement.

As pointed out above, this contract lacked the formal requisites for the creation of an easement. The comment on § 514(a), supra, reads:

"*Lack of formal requirements.* An easement can be created by express conveyance only when there is in its creation a compliance with certain formal requirements. (See §§ 467 and 469.) If, in the attempt to create a privilege of use of land, there is a failure to comply with these requirements, the resulting interest, if any, is a license rather than an easement. This is true even though the use contemplated is such that, had the necessary requirements been complied with, the interest would have been an easement."

In addition, the permission given could be terminated at the will of the railroad company in the case of a sale or lease. This power of termination of the permission given is repugnant to the concept of an easement.

We must conclude plaintiff possessed merely a license, and not an easement.

Since plaintiff had merely a license from the owner to use the property, the license was good only so long as the licensor continued to own the land. It could not bind its successors in title, except by the grant of an easement in the land. Thomson on Real Property, quoted supra, says, "A license is a mere permission or personal and revocable privilege without the licensee possessing any estate in the land. A license passes no property in land and no interest in it." As pointed out above, the railroad company was careful not to convey any interest in the land, at least one that would survive the passage of title to someone else. See Barnes v. United States, 46 Ct. Cl. 7; Lyons v. Philadelphia & Railway Co., 209 Pa. 550, 58 A. 924.

For a breach of the contract, plaintiff would have a right of action *in personam* against the railroad company, but it had no right of action as the owner of an interest in the land.

When title passed out of the hands of the railroad company, the license thereupon expired. Thereafter, its successor

in title could renew the license or not at its pleasure, and on such terms as it chose. Hence, the fifth paragraph of the contract, set out supra, under which the railroad company or its grantees could require the pipeline company to relocate its pipelines at its own expense, in the case of a sale, merely stated explicitly that which would have been the result anyway. The only necessity for the provision was that it applies not alone to the case of a sale, but also to the case of a lease.

Hence, the effect of the contract between the railroad company and the pipeline company was to require the pipeline company to relocate its pipes at its own expense when title passed out of the hands of the railroad company, if the railroad company or its successors in title requested it to do so. The parties must have used the word "grantees" to signify the persons who acquired title from the railroad company, whether by sale or condemnation, for this would have been the result independent of contract.

Had defendant purchased the lands from the railroad company, it clearly would have had the right to require plaintiff to relocate its pipes at its own expense. This is an expense plaintiff knew it would have to incur in case of a sale. We perceive no reason why the circumstance that the Government acquired title through condemnation, instead of purchase, should relieve plaintiff of this expense.

Whether or not paragraph 5 had been inserted in the agreement, plaintiff's license from the railroad company expired as soon as title to the lands passed to another. The giving of a license to use the lands was an incident of ownership, and, hence, the railroad company could not extend the term of the license beyond its ownership. The Government, therefore, no more took any right plaintiff had when it condemned the property than it would have taken had it purchased it.

Plaintiff is not entitled to recover its cost of relocation of the pipelines with which we are here concerned.

It results that plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE and MADDEN, Judges, concur.