**STATE OF ARIZONA, a body politic acting By and Through the ARIZONA HIGHWAY DEPARTMENT**

v.

**The UNITED STATES.**

No. 67–73.

United States Court of Claims.

April 17, 1974.

Roderick G. McDougall, Phoenix, Ariz., for plaintiff. James R. Redpath, Phoenix, Ariz., attorney of record. Gary K. Nelson and Donald O. Loeb, Phoenix, Ariz., of counsel.

Ray Goddard, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This case is here on defendant's motion and plaintiff's cross motion for summary judgment. The plaintiff is the State of Arizona (Arizona) which brings this action to recover $81,361.18 of the costs it incurred in the removal

and relocation of utility facilities owned by El Paso Natural Gas Co. (El Paso) for the construction of an interstate highway. In arriving at our decision we need only consider plaintiff's first cause of action which is brought under the Tucker Act, 28 U.S.C. § 1491. The facts are as follows:

On September 18, 1950, the United States Forest Service issued a Special Use Permit to El Paso for the purpose of construction of a pipeline through the Kaibab National Forest in Arizona. Paragraph 14 of the permit states that the permit is terminable "at the discretion of the regional forester or the Chief, Forest Service." Paragraph 10 requires the permittee, at its own expense, to remove all of its structures and improvements within a reasonable time after said permit is terminated.

On January 27, 1966, Arizona submitted an application for a Special Use Permit covering the same portion of the Kaibab Forest as El Paso's permit. The purpose of use stated in such application was the construction of a section of the Kingman-Ash Fork Interstate Highway. The Kingman-Ash Fork Highway was to be built under the Federal Aid for Highways legislation, 23 U.S.C. § 101 et seq., under which the Federal Government enters into agreements with states to pay a large percentage of the cost of constructing interstate highways. The application provided that the following condition was to be made part of the Special Use Permit:

Where the State does not move the improvements involved, the State will reimburse the Forest Permittee for removing and rebuilding such improvements.

On the basis of the aforementioned application a Special Use Permit was issued to Arizona on May 25, 1966. *Inter alia* the permit provided:

21. *General:*

\* \* \* \* \* \*

(g) Any National Forest recreation and administrative improvements and all other existing improvements damaged, disturbed, destroyed, or required to be moved from the right-of-way due to highway construction or maintenance, whether shown or not shown on the plans, will be replaced, repaired or moved to a suitable location as specified by the Forest Supervisor.

On May 9, 1968, Arizona entered into a Utility Agreement with El Paso which obligated it to reimburse the utility for costs incurred in relocating its facilities. W. H. Baugh, Division Engineer for the United States Federal Highway Administration, had prior knowledge of such agreement and consented to it. On June 12, 1968, he formally approved the agreement by having his authorized representative, Jacob Erickson, sign it for him as Division Engineer, Bureau of Public Roads, under the word "Approved". (The Baugh signature appears in the wrong capacity. The functions of the United States Bureau of Public Roads, Department of Commerce were transferred to the Department of Transportation effective April 1, 1967, 49 U.S.C. § 1651 note, E.O. No. 11340, and assigned to the Federal Highway Administration within such Department. We assume this fact is of no legal significance since not raised by the parties.) El Paso's pipeline facilities were relocated in September 1968. In accordance with the Utility Agreement, Arizona reimbursed El Paso for the $86,187.69 of costs it incurred in relocating its pipelines.

By letter from the office of the Division Engineer, dated December 3, 1968, Arizona was informed that no authority could be found to permit any Federal reimbursement of the costs it incurred as a result of the relocation of El Paso's facilities. However, on October 7, 1969, H. C. Tilzey, who succeeded Baugh as Division Engineer, approved a detailed estimate of the cost of relocating El Paso's pipelines submitted by the plaintiff. On October 22, 1969, Jacob Erickson, an authorized representative of Tilzey signed a Federal-Aid Project Agree-

ment for construction of the highway for him. This agreement expressly included the utility adjustment as part of the project.

On November 19, 1969, Arizona submitted a claim for $81,361.18. This amount is 94.4% of $86,187.69, the total amount paid El Paso by Arizona. On November 21, 1969, the Federal Highway Administration paid plaintiff's claim certifying that the $81,361.18 was approved for payment and was justly due. Subsequently Arizona refunded this sum at the request of the Federal Highway Administration.

In compliance with Federal Highway Administration Policies and Procedures Memorandum 30–4, Arizona submitted a memorandum of law to the defendant dated June 24, 1971, supporting its right to reimbursement for the costs it incurred in relocating El Paso. The Federal Highway Administration was not persuaded by this memorandum. On December 15, 1971, it formally and finally denied any obligation on its part to grant Federal participation in the costs of the El Paso relocation.

Defendant relies heavily on the provisions of El Paso's Special Use Permit. Such permit was expressly terminable "at the discretion of the regional forester or the Chief, Forest Service." The permit further provided:

10. Upon abandonment, termination, revocation, or cancellation of this permit, the permittee shall remove within a reasonable time all structures and improvements except those owned by the United States, and shall restore the site, unless otherwise agreed upon in writing or in this permit. If the permittee fails to remove all such structures or improvements within a reasonable period, they shall become the property of the United States, but that will not relieve the permittee of liability for the cost of their removal and restoration of the site.

Defendant cites Sinclair Pipe Line Co. v. United States, 287 F.2d 175, 152 Ct.Cl. 723 (1961), as to the non-compensability of such a license as against a Federal taking.

Because of the above provisions, the defendant argues that it is not required to reimburse Arizona under 23 U.S.C. § 123, since Arizona was not legally obligated to recompense El Paso. Such contention is based on the Government's assumption that El Paso's permit was *ipso facto* terminated by either: (1) the issuance of the subsequent Special Use Permit to Arizona, or (2) the passing of title to the lands in question to Arizona. We reject defendant's argument since it requires us judicially to impose a condition for the participation of Federal funds beyond those legislated by Congress. We therefore conclude: 1. the authority of Federal officials to reimburse Arizona for the relocation of El Paso's utility facilities is established under 23 U.S.C. § 123, and 2. the exercise of such authority by the approval of the project plans contractually bound the defendant to pay its proportionate share pursuant to 23 U.S.C. § 106(a).

23 U.S.C. § 123 enumerates just two conditions that must be met before Federal funds may be used to reimburse States for the costs of utility relocations incident to highway construction. These are: (1) that such payment does not violate a law of the State or a legal contract between the utility and the State, and (2) the Secretary shall be satisfied by proof of the payment of such costs by the State. (When 23 U.S.C. § 123 was enacted in 1958, the word "Secretary" referred to the Secretary of Commerce. However his functions and duties, under Title 23, were transferred to the Secretary of Transportation by 49 U.S.C. § 1655(a) (1966)).

The Government does not contend that either of the above conditions for the participation of Federal funds has not been met in this case. It relies on the argument that 23 U.S.C. § 123(a) is not in and of itself sufficient to create a contractual obligation for Federal reimbursement. With this we agree. The statute speaks only to when "Feder-

al funds *may* be used". (Emphasis supplied). In doing so it merely states the limits of executive discretion without mandating its exercise in any particular manner.

The missing element in the statutory scheme which entitles the plaintiff to recover is quite logically an exercise of executive discretion in favor of reimbursement. 23 U.S.C. § 106(a) states:

> * * * the State highway department shall submit to the Secretary for his approval, as soon as practicable after program approval, such surveys, plans, specifications, and estimates for each proposed project included in an approved program as the Secretary may require. * * * *his approval of any such project shall be deemed a contractual obligation of the Federal Government for the payment of its proportional contribution thereto.* * * * (Emphasis supplied).

As previously discussed the word "Secretary" as used in Title 23 refers to the Secretary of Transportation, 49 U.S.C. § 1655(a) (1966). Pursuant to 23 ·C.F.R. § 1.37, the functions of the Secretary were delegated to Francis Turner, Federal Highway Administrator and to various other employees of the Federal Highway Administration.

■ We hold that the Government has a contractual obligation to pay Arizona its proportionate share of El Paso's relocation costs under 23 U.S.C. § 106 since the Government's authorized employees approved an agreement so providing. Such approval is evidenced by: (a) the affixation of Division Engineer W. H. Baugh's signature to Arizona's Utility Relocation Agreement with El Paso under the word "APPROVED", (b) the approval of a detailed estimate of relocation costs by Baugh's successor as Division Engineer, H. C. Tilzey, (c) Tilzey's approval of the Federal-Aid Project Agreement which expressly included the utility adjustment, and (d) the payment of plaintiff's claim certifying that such amount was approved for payment and was justly due.

■ The Supreme Court has recently held that the expectation of continued enjoyment of a revocable license is not mandated by the Fifth Amendment as an element of damage for an eminent domain taking. United States v. Fuller, 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973). On this authority we may assume that the United States might have built the highway itself and not have had to reimburse the utility for the cost of relocating the pipeline. There is also no doubt that the United States may bind itself to pay to satisfy obligations it conceives to be moral, not legal. United States v. Realty Co., 163 U.S. 427, 16 S.Ct. 1120, 41 L.Ed. 215 (1896). Plaintiff points to the Uniform Relocation Assistance and Real Property Acquisitions Policy Act of 1970. 84 Stat. 1894, 42 U.S.C. § 4601 et seq., which compensates for the relocation of persons displaced as a result of Federal and Federally assisted programs. Plaintiff in its brief points out that this is an expansion of the policy originally unveiled in the 1956 Highway Act, of reimbursing for relocation of public utilities. See Senate Rep.No.1997, 1962, U.S.Code Cong. & Admin.News, pp. 3961–62, so stating, in comment on an earlier version of relocation assistance for persons. Plaintiff also quotes remarks of Senator Lehman on the 1956 Act, 102 Cong.Rec. 9219, 9220 (1956). They show that the Congress was willing to reimburse for the relocation of utilities along existing highway rights of way, subject only to the qualification, if the State could require relocation without reimbursement, the United States should have the benefit of the same right. Since 1956, a number of States have enacted laws providing for such reimbursement, that previously had required relocation without it. Nevertheless, the Congress has not changed the law except by requiring, as already cited, that the State must actually pay. Here it has. In the circumstances, we cannot attach controlling weight to the defendant's demonstration, however convincing it may be, that El Paso's license was subject to cancellation

without reimbursement. There is no showing that Arizona would not have had to pay relocation costs in case of a project wholly its own. Counsel say it would have been so obligated.

Defendant's motion for summary judgment is denied. Plaintiff's cross motion for summary judgment is granted. Judgment is entered for plaintiff in the amount of $81,361.18.