In this suit the plaintiff seeks to recover certain of its expenses incurred in connection with the performance of a contract to construct an irrigation project, which it asserts resulted from the government’s failure to perform certain obligations under that contract. The government has moved for summary judgment on the grounds that (1) we do not have jurisdiction because the agreement is not a "contract” under the Tucker Act, and (2) that the government has not violated its contractual obligations. We deny the motion for summary judgment.
I.
Plaintiff and the Soil Conservation Service of the Department of Agriculture ("the Service”) entered into a "Project Agreement” under which the plaintiff undertook to construct a river pumping and irrigation system and the Service agreed to pay 50 percent of the construction costs. The agreement further stated:
*553 The Service will. . . [p]rovide authorized assistance, such as estimates of construction costs, length of construction period, results of tests and studies as may be available, site investigations, designs and layout, drawings and specifications, and revisions of drawings and specifications.
The Service provided the plans and specifications, and the plaintiff hired a contractor to build various structures. The plaintiff gave the contractor the plans and specifications the Service prepared to define the work to be performed.
During the performance of its contract with the plaintiff, the contractor told the plaintiff that the plans and specifications were inaccurate. The contractor later sued the plaintiff in a State court, seeking an equitable adjustment for an alleged material change in conditions and recovered $320,984.05. The Service paid plaintiff one half of that amount, pursuant to a provision in the agreement providing that "[additional funds required as a result of ... a judgment as a result of a lawsuit brought by the contractor will be provided in the same ratio as construction funds are contributed under the terms of the agreement.”
In this suit, plaintiff seeks the remaining half of the $320,984.05 it paid to its contractor and its expenses of $31,852.22 in defending that suit.
II.
The government argues that the "Project Agreement” between the plaintiff and the Service was not a "contract” under the Tucker Act, which gives this court jurisdiction of "any claims against the United States founded upon . . . any express or implied contract with the United States.” 28 U.S.C. § 1491 (1976). The government’s theory apparently is that because the "Project Agreement” was merely an undertaking to make a grant of money to the plaintiff, the defendant’s additional obligations under that agreement to furnish plans and specifications were not binding contractual commitments that this court can enforce.
On its face, however, the project agreement is a contract. It is in the form of a traditional contract. It begins with the *554 statement "this agreement, made this 1st day of May, 1970 by and between . . . This is followed by two "whereas clauses” and then the statement: "now therefore, in consideration of the premises and of the several promises to be faithfully performed by the parties hereto as hereinafter set forth, the [parties] do hereby agree as follows...” The agreement then sets forth in six-and-one-half single-spaced pages the rights and obligations of the parties.
At the upper righthand comer of the first page there is the following language:
state_Montana_
watershed Sidney Water Users Assn.
contract NO. 12-10-240- 3085_
This agreement is not just a grant contract, but a complete agreement under which all the parties, including the Service, have assumed specified, detailed, mutual, and reciprocal obligations.
We have twice ruled that an agreement by which the government undertook to furnish financial assistance to a state constitutes a contract in the traditional sense. Texas v. United States, 210 Ct. Cl. 522, 527-28, 537 F.2d 466, 468-69 (1976) (Federal Disaster Assistance Act); Arizona v. United States, 204 Ct. Cl. 171, 177, 494 F.2d 1285, 1288 (1974) (Federal Aid for Highways legislation). Although those cases involved the government’s contractual obligation to furnish funds rather than, as here, to furnish plans and specifications, both commitments were contractual ones that permitted suit under the Tucker Act for their alleged breach. Moreover, in Missouri Health and Medical Organization, Inc. v. United States, 226 Ct.Cl. 274, 641 F.2d 870 (1981), we recently pointed out that "[a]n instrument, other than the traditional formal contract, can create obligations which are cognizable in this court” (id at 278).
m.
In refusing to pay the remaining monies that the plaintiff paid pursuant to the judgment in the suit against it by the contractor, the government relies on the provision of the *555 agreement that obligates it to pay only one-half of "[additional funds required as a result of . . .a judgment as a result of a lawsuit brought by the contractor.” It asserts that this provision limits its liability for any alleged expenses the plaintiff incurs as a result of a judgment in a lawsuit by the contractor to 50 percent of that judgment. The plaintiff responds that that provision does not apply where, as here, the judgment itself resulted from the government’s breach of the contract. The plaintiff asserts that in that situation it may recover from the government its total damages resulting from the breach even though those damages resulted from the judgment.
The meaning of the 50 percent judgment clause is unclear and difficult to determine. The clause itself is ambiguous, and other provisions of the contract provide little assistance in interpreting it. In these circumstances we conclude that parol evidence regarding the negotiation of the contract and the intention of the parties might aid in construing the provision. Moreover, if it were held either that the Service had not breached its obligation under the contract to furnish plans and specifications or that, even if there had been such a breach, it was not the cause of the plaintiffs judgment liability to the contractor, there would be no need to interpret the 50 percent judgment provision. Accordingly, we decline at this time to decide whether the government complied with its contractual obligation by paying the plaintiff 50 percent of the amount the plaintiff paid to its contractor pursuant to the State court judgment.
The defendant’s motion for summary judgment is denied, and the case is remanded to the Trial Division for further proceedings.