COMMUNITY RELATIONS–SOCIAL DEVELOPMENT COMMISSION IN MILWAUKEE COUNTY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 452–83C.

United States Claims Court.

Sept. 24, 1985.

James L. Feldesman, Washington, D.C., for plaintiff; Klores, Feldesman & Tucker, of counsel.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard; David M. Cohen, Director, of counsel.

## OPINION DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

In this suit, plaintiff, Community Relations-Social Development Commission (CR–SDC), seeks reimbursement of "indirect costs" incurred in connection with its operation of a remedial education program for preschool children (Headstart). Plaintiff contends that such costs are reimbursable from grants awarded to it by the federal government for each of the fiscal years 1976–80. Defendant has moved for dismissal of the suit, on the ground that the court lacks jurisdiction because the claim is not founded upon any statute, regulation or contract as required by the Tucker Act, 28 U.S.C. § 1491. Alternatively, defendant asks for summary judgment, contending it is under no obligation to pay indirect costs because the grants made no provision for reimbursement of such costs, and, in any event, because plaintiff failed to follow the necessary procedures to qualify for reimbursement.

### I.

Plaintiff, CR–SDC, is a local government agency created in 1962 by actions of the county and city of Milwaukee to carry out a variety of social service and community projects. Its activities are funded by private donations, governmental grants, and contracts with the county and city of Milwaukee, the State of Wisconsin and the federal government. It has been the prime recipient of federal poverty program funding in Milwaukee County; and in 1964, it attained its present status as a Community Action Agency (CAA). As a CAA, plaintiff has not only administered poverty program grants, but received other grants from federal, state and local agencies to provide aid to low-income people. Since 1965, CR–SDC has been operating a Headstart program to provide preschool educational and other benefits to underprivileged children. In connection with the operation of Headstart, from 1965 to 1972, it received annual grants from the Office of Economic Opportunity (OEO) and thereafter from the Department of Health, Education and Welfare (HEW) (now Department of Health and Human Services (HHS)).

HEW's form for Notice of Grant Awarded was substantially the same for each of the years at issue. It divided the approved budget into two parts: Direct Costs and Indirect Costs. Insofar as applicable to the Headstart program, the direct costs were in turn divided into subcategories: Personnel, Fringe Benefits, Travel, Equipment, Supplies, Contractual and Other. For each subcategory HEW set out an approved sum, including a "–0–" for Equipment, for which it made no grant. The Indirect Costs line on the form followed the total of direct costs and had the printed additional phrase "Calculated at __% of $____," but for each year there was neither a "–0–" nor an amount; the entire item was left blank. The "Total Federal Approved Budget" line, which followed, only repeated the direct costs total.

The approved budgets on the award forms were:

| Fiscal Years | Amounts |
| --- | --- |
| 1976 | $1,680,803 |
| 1977 | 1,655,490 |
| 1978 | 2,115,671 |
| 1979 | 2,988,650 |
| 1980 | 2,838,758 |

In fact, in none of the years did plaintiff expend for direct costs of the Headstart program the total amount approved. A comparison of the amounts now claimed for reimbursement of indirect costs and the claimed unexpended balances is as follows:

| Fiscal Year | Claimed Indirect Costs | Unexpended Amount |
|---|---|---|
| 1976 | $ 185,237 | $ 97,258 |
| 1977 | 136,321 | 58,223 |
| 1978 | 148,783 | (more than indirect cost claim) |
| 1979 | 269,572 | (more than indirect cost claim) |
| 1980 | 341,220 | (more than indirect cost claims) |
| Total | $1,081,133 | $915,056 |

When plaintiff billed the government for its indirect costs, HEW disallowed its claims. In May 1982, plaintiff formally requested reimbursement for fiscal years 1976–79. The Department of Health and Human Services, HEW's successor, denied the request "because no funds were awarded for indirect costs in any of the indicated years." Plaintiff appealed to the HHS Grant Appeals Board, which held it lacked jurisdiction over the claim because the grants "did not encompass awards for indirect costs." The Board, finding no denial of payment of "an amount claimed under an award", dismissed the matter. Plaintiff then instituted suit in this court.

## II.

Defendant contends that this court lacks jurisdiction to consider the claim because plaintiff's grant is not the type of contract on which the United States has consented to be sued pursuant to 28 U.S.C. § 1491.

Defendant contends that a grant is not a contract, as it evinces no contractual language or intent to be bound. This question, however, has already been laid to rest by the Court of Claims, which has held that a notice of a federal grant award in return for the grantee's performance of services can create cognizable obligations to the extent of the government's undertakings therein. *Missouri Health & Medical Organ., Inc. v. United States*, 226 Ct.Cl. 274, 278–79, 641 F.2d 870, 873 (1981). *See also*

*City of Manassas Park v. United States*, 224 Ct.Cl. 515, 520, 633 F.2d 181, 183, *cert. denied*, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980); *State of Texas v. United States*, 210 Ct.Cl. 522, 527–30, 537 F.2d 466, 468 (1976); and *Arizona v. United States*, 204 Ct.Cl. 171, 177, 494 F.2d 1285, 1288 (1974).

Defendant contends that the awards made to plaintiff excluded any sums for indirect costs. However, for a variety of reasons, to the extent of the "Total Federal Approved Budget" for each year this is not accurate:

1. The awards did not affirmatively exclude reimbursement of indirect costs. Had they done so, they would have inserted a "–0–" with respect to such item, as they did with respect to "Equipment," rather than merely left the item blank.

2. Block 5 of each Notice of Grant Awarded states that the grant is awarded "Under authority of P.L. 93–644 Title V (for 1976–78) and P.L. 95–568 (for 1979–80) and subject to pertinent DHEW & OHD (Office of Human Development) Regulations and Policies Applicable to * * * Service Grant." In addition, Block 19, "Remarks", refers to attachments, the number of which vary in each fiscal year; but in every grant, an attachment called "General Conditions" is included. The General Conditions in the 1980 grant, which is typical of all, state that "This grant is subject to HEW Regulations in Title 45 of the Code of Federal Regulations. Parts * * * 74 'Administration of Grants' (September 19, 1973 *Federal Register* for public agencies)."

The referenced statutes include 42 U.S.C. § 2928f(c) (1976 & Supp. IV 1980), which states in part:

The Secretary shall prescribe rules or regulations to supplement subsection (a) of this section, which *shall be binding* on all agencies carrying on Headstart program activities with financial assistance under this part. * * * Policies and procedures shall be established to insure that *indirect costs* attributable to the common or joint use of facilities and services by programs assisted under this part and

other programs *shall be fairly allocated* among the various programs which utilize such facilities and services. [Emphasis added.]

Defendant argues this amounts only to a broad directive to the agency, not to an express statutory mandate for payment of costs so as to create contractual liability. However, the language of § 2928f(c), mandating that the agency insure fair allocation of indirect costs strongly implies that Congress directed that indirect costs fairly allocable to Headstart grants be paid.

3. HEW regulations entitled "Principles for Determining Costs Applicable to Grants and Contracts with State and Local Governments" (45 C.F.R. § 74, App. (C), Part I, ¶ F.1 (1976)), incorporated by reference in the grant award, define indirect costs as follows:

> Indirect costs are those (a) incurred for a common or joint purpose benefiting more than one cost objective, and (b) not readily assignable to the cost objectives specifically benefited, without effort disproportionate to the results achieved.

The same regulations provide that "All grantee departmental indirect costs, including the various levels of supervision, are eligible for allocation to grant purposes provided they meet the conditions set forth in this Appendix," and permit any of three methods of determining allocable indirect costs: (1) actual allocations, (2) annually negotiated fixed percentage of direct cost rates, or (3) negotiated lump sums. *Id.*, App. C, Part I, ¶ F.2. Thus indirect costs are as much a part of the project costs as direct costs but differ only as to methods of proof, and should be included in reimbursable costs because not expressly excluded.

■ 4. That an HEW award of funds for direct costs of a project includes the right to use such funds for reimbursement of amounts accounted for as allowable indirect costs is necessarily implicit in the provision of the regulations which states that a grantee's "transfer of amounts budgeted for direct costs to absorb authorized increases in indirect costs" does "not require Federal approval." (45 C.F.R. § 74.102(c).)

5. The HEW and OHD policies (likewise referenced in Block 5 of the grant awards), as expressed in the OHD Grants Administration Manual, further demonstrate the intent that grant funds encompass indirect costs. The Manual states that an OHD program grantee may charge indirect costs to the project, with two exceptions not applicable here. Chapter 6–150, Reimbursement of Indirect Costs, provides that "The purpose of this chapter is to prescribe the Department's policies and procedures governing the reimbursement of indirect costs." *Id.* § 6–150–00. The chapter applies to all HEW grants. *Id.* § 6–150–10. The policy states: "Except as otherwise provided in Chapter 6–160 and in paragraphs B. through E. of this section, all grants awarded by the Department will provide for the full reimbursement of indirect costs applicable to the grants." *Id.* § 6–150–20. The exceptions are for certain grant types and cost-sharing, neither applicable here, for untimely indirect cost proposals, or grants that never established a permanent indirect cost rate.[1]

6. That a grant for Headstart direct costs was intended by HEW to include the right to reimbursement of provable indirect costs within the overall sum is also implicit in the affidavit of Norman Goldstein, Director, Division of Grants and Contracts Management of HHS, produced by defendant. This states that during the years at issue, when Headstart program grantees recovered reimbursement for some of their indirect costs from the Office of Economic

---

1. Two circulars issued by HEW to state and local agencies also support this policy. "A Guide for Local Government Agencies" (OASC–8), which conforms with Budget Bureau Circular A–87 (like Appendix C), provides "A locality may charge Federal programs in accordance with their cost allocation plans and indirect cost pro-

posals. These charges shall be accepted by the Federal agencies making the awards." "A Guide for State and Local Government Agencies" (OASC–10) (1976) states: "All indirect costs of a State or local department or unit performing a grant or contract are allowable, i.e., eligible for reimbursement * * *."

Opportunity (OEO), "grantees were advised to identify indirect costs not otherwise covered by OEO funds applicable to their Head Start grants and these were funded as direct costs of the Head Start award."

7. A still further indication that HEW did not regard the absence of a specific indirect cost figure on any of plaintiff's grant awards as precluding plaintiff from receiving reimbursement for its indirect costs is also reflected in the conduct of the parties to the grant awards. On October 18, 1973, a Negotiation Agreement-Nonprofit Institutions was executed between HEW and plaintiff. That agreement established a provisional indirect cost rate of 8 percent of direct costs, which plaintiff was entitled to use to support its claim for indirect costs on all grant programs and contracts with the federal government, and which was effective until amended. Subsequently, on May 12, 1980, the government and plaintiff concluded a negotiation agreement for final indirect cost rates. The 1980 agreement, "State and Local Department/Agency Indirect Cost Negotiation Agreement," expressly replaced the 1973 agreement. It provided final rates retroactively for fiscal years 1973–78 and provisional rates for 1979 and 1980, applicable to all programs. These rates were subject to "statutory or administrative limitations" and were applicable to a given grant "to the extent that funds are available." Those rates were 9.2 percent of direct costs for 1976–78 and 12.4 percent and 12.7 percent for 1979 and 1980 respectively.[2]

■ For all of these reasons, it is concluded that in the agreements encompassed by the grant awards from HEW to plaintiff, it was both expressly and implicitly agreed that plaintiff was entitled to use the funds for reimbursement of both the direct and indirect costs of its Headstart program.

**2.** Final rates of 11.5 percent per year were reached subsequently for fiscal years 1979 and

1980.

### III.

■ However, to the extent that plaintiff's claim for indirect costs for any year exceeds the total grant award, defendant's position is correct. It cannot be demonstrated that HEW ever agreed to pay to plaintiff any sum beyond the amount stated on each award. Plaintiff relies upon the terms of the regulations which provide generally for payment of indirect costs. But nothing in the regulation states or implies that it overrides the more specific "Total Federal Approved Budget" amount on the Notice of Grant Awarded, which purports to represent the sum of the reimbursable direct and indirect costs.

Plaintiff also relies on the OHD Grants Administration Manual which provides (at Chapter 6–150, Reimbursement of Indirect Costs, § 6–150–50(A)(1)):

e. If the difference between a provisional rate and a permanent rate results in the need for funds in excess of the total amount awarded under a grant, such funds will be provided to the grantee when they are available from the same appropriation from which the grant was awarded.

But plaintiff has not demonstrated by affidavit or other proper proof that any funds are or were available to pay the excess from the same appropriations from which the grants were awarded.

### IV.

Defendant also contends that plaintiff is not entitled to reimbursement of indirect costs because it failed to follow valid HEW procedural requirements for such reimbursement.

A. First, defendant argues that plaintiff may be denied indirect costs if it did not submit a timely indirect cost proposal. Defendant claims that plaintiff repeatedly failed to submit timely indirect cost proposals; it could properly be treated as not having a currently effective indirect cost

rate, and therefore it was properly denied indirect cost reimbursement.

In support of this untimeliness argument, defendant relies on the OHD Grants Administration Manual which provides (§ 6–150–20D.):

Indirect cost reimbursement will be based on the indirect cost rates established by grantees in accordance with the policies and procedures contained in Chapter 6–100. Grantees that fail to submit timely indirect cost proposals in accordance with the requirements of Chapter 6–100 will be deemed as not having a currently effective indirect cost rate and will not be reimbursed for indirect costs in future grants awarded by the Department. If a rate is subsequently established, based on the late submission of an indirect cost proposal, indirect cost reimbursement will be limited to the indirect costs applicable to the period subsequent to the date the proposal is submitted.

In further support of this argument, defendant relies on the provision of the OHD Manual, which states:

6–150–50 NORMAL PROCEDURES FOR AWARD AND SETTLEMENT OF INDIRECT COSTS

A. *Project Grants*

\* \* \* \* \* \*

2. *Grantees Without Currently Effective Indirect Cost Rates*

a. *Delinquent Grantees*

(1) When a currently effective indirect cost rate is not available at the time of an award because the grantee was delinquent in the submission of its indirect cost proposal, the award will not include funds for the reimbursement of indirect costs. If the grantee subsequently establishes a currently effective rate, the granting agency may, at its discretion, amend the award to provide an appropriate amount for indirect cost reimbursement if the amendment can be made within the same Federal Fiscal Year in which the initial award was made. This amount, however, will be limited to the indirect costs applica-

ble to the period subsequent to the date of the grantee's proposal \* \* \*.

■ Plaintiff counters with the argument that the OHD Manual provides that for a grantee proposal to be considered untimely the Office of the Regional Comptroller of HEW must so identify the grantee by republishing its most current Negotiation Agreement stamped with the word "Delinquent". (OHD Manual § 6–150–40(A).) The affidavit of plaintiff's executive director, Donald Sykes, states that although HEW threatened to label plaintiff delinquent, HEW never carried out its threat. Defendant has not introduced evidence to the contrary. The OHD Manual also states that a granting agency "should assume that the grantee's indirect cost proposal was submitted in a timely manner unless a statement to the contrary is included in the Negotiation Agreement." (OHD Manual § 6–150–50(A)(2)(b).) The 1980 Negotiation Agreement contains no such determination. In fact, in 1980 HEW proceeded to negotiate final rates covering all preceding fiscal years. Under its own rules, defendant had to act affirmatively to label plaintiff delinquent. Not having done so, it may not deny reimbursement of plaintiff's indirect costs based solely on the fact of plaintiff's tardiness.

B. Second, defendant contends that plaintiff never established an *effective* indirect cost rate. Accordingly, defendant argues that OHD Manual § 6–150–50(A)(2), *supra,* precludes CR–SDC's recovery of its indirect costs. In support, defendant refers to Section II of the 1973 Negotiation Agreement, which stated in part:

F. SPECIAL REMARKS: 1. The rate contained in this agreement is based on the assumption that OEO direct funding of administrative cost will terminate 6/30/74, therefore this rate is invalid unless or until OEO support terminates, with the exception of grant No. 1 R18 MH 23119–01, which was not considered in the OEO funding of administrative cost. 2. If OEO support terminates, the institution must arrange for an audit each fiscal year covering total costs in-

curred on all its activities during that fiscal year * * *.

Referring to the language "invalid unless or until OEO support terminates," defendant claims plaintiff never established an effective rate and, under the rules in OHD Manual, "its claim for indirect cost reimbursement will be disallowed." (§ 6–150–50(A)(2)(b).)

In a letter to plaintiff dated April 13, 1976, HEW took the position that since OEO's direct funding of administrative costs did not terminate in 1974 the rate set on October 18, 1973, was inapplicable; and defendant now asserts in its brief and oral argument that because OEO funding of administrative costs continued until September 30, 1981, and could have been available to CR–SDC until then, the Special Remarks section disqualifies plaintiff from receiving reimbursement of by HEW (or HHS) indirect costs until that date, whether or not it did receive any OEO money. However, the Sykes affidavit states that CR–SDC understood the "Special Remarks" section of the 1973 agreement to mean that CR–SDC would be eligible for reimbursement *to the extent that* its OEO administrative funding did not cover the indirect costs applicable to a particular grant award.

Defendant does not support by affidavit or otherwise that OEO funding of plaintiff's indirect costs was in fact available to plaintiff in the years at issue; and the record is unclear as to when OEO direct funding or support of plaintiff's administrative costs in fact terminated. The only evidence on the subject is in Mr. Sykes' affidavit, which states:

3. * * * CR–SDC had, prior to 1972, been receiving grants from the Office of Economic Opportunity (OEO) in which CR–SDC had been given funding to pay for overall administrative costs.

and

11. That CR–SDC at this point has not been reimbursed for any of the amounts claimed in this lawsuit. CR–SDC has not received funds from OEO or any other agency to pay the claim made in this case.

■ In any event, contrary to defendant's argument, it is unreasonable to construe the "Special Remarks" proviso as meaning that the rate contained in the 1973 agreement was not effective because it was not actually used to obtain HEW funds, even though plaintiff did not receive OEO funding. The purpose of the proviso appears merely to prevent indirect costs being reimbursed twice.

Moreover, if the proviso were to be construed in the technical fashion which defendant urges, the rate was effective because by its terms it was in effect at least for grant No. 1 R 18 MH 23119–01, and the 1976 letter from defendant to plaintiff indicates that HEW viewed the rate as effective for non-OEO programs. The affidavit of plaintiff's executive director also states, and defendant has not denied, that the provisional rate agreement has been recognized and used by other HEW components. It cannot be concluded therefore that plaintiff "has *never* established a rate with the Department in the past," (OHD Manual § 6–150–50(A)(2)(b)) [emphasis added], and was without a currently effective indirect cost rate. Assuming that the underlying concern of the Manual provision is that the grantee have an undisputed basis for the indirect cost rate, the plaintiff's 1973 Agreement satisfies that concern however the proviso is interpreted.

C. In a form attached to the 1973 indirect cost Negotiation Agreement, stated to be applicable to private nonprofit institutions, HEW also required submission annually of an indirect cost proposal.

The 1973 Negotiation Agreement also provided:

An indirect cost proposal encompassing all activities of your institution together with the required supporting information must be submitted to this office for each year in which your institution claims indirect costs under grants and contracts awarded by the Department. The proposal is due within six months after the close of your institution's fiscal year. * *

Failure to submit a timely proposal will be interpreted as a forfeiture of reimbursement for indirect costs.

Defendant's third contention is that plaintiff's failure to comply with these requirements also disqualified plaintiff from receiving indirect cost reimbursement.

Assuming this form can be applied to plaintiff, a governmental entity, plaintiff's executive director states in his affidavit that during the 5-year period, CR–SDC made a number of submissions to comply with HEW's request and, after obtaining the services of a major accounting firm, filed a submission from which the 1980 Agreement, containing final rates for prior fiscal years, resulted. Defendant has not denied these statements and has no contrary affidavits.

In any event, the 1980 Negotiation Agreement, which expressly replaced its 1973 predecessor, contains no similar limitations and sets out rates for all prior years, indicating HEW's satisfaction with the submissions or its waiver of the requirement set out previously.

D. Finally, for denial of plaintiff's claims defendant relies upon a provision of the OHD Manual, also applicable exclusively to "Grantees That Have Never Established Indirect Cost Rates." This states (§ 6–150–50(A)(2)(b)) that "If the grantee does not establish the [indirect cost] rate prior to the submission of the expenditure report, its claim for indirect cost reimbursement will be disallowed." Defendant argues that even if the 1980 agreement established effective indirect cost rates, such rates (for other than 1980) were not established until after plaintiff submitted its expenditure reports.

However, an affidavit by Mary Champagne, plaintiff's controller, denies that the expenditure reports for the years in question have been submitted. Defendant concedes that it has no record of the submission of such expenditure reports. Because we have concluded that plaintiff did have an effective indirect cost rate, the provision on which defendant relies is inapplicable. But had we concluded otherwise, this mate-

rial factual dispute would still demand that we deny summary judgment.

### Conclusion and Order

Defendant's motion to dismiss the complaint is denied. Defendant's motion for summary judgment dismissing that portion of its claim which is in excess of $915,056 is allowed, but the motion is otherwise denied. The parties are directed to submit to the court within 30 days hereof their proposals for further proceedings in this case.

